Good morning, Your Honors. May it please the Court. I represent the petitioner Mr. Mohamed Alkadhi, a native and citizen of Yemen, in this petition for review in which the Board of Immigration Appeals reversed a decision of the immigration judge granting Mr. Alkadhi's application for adjustment of status. The so-called frivolous asylum bar is one of the most draconian provisions of the immigration and Nationality Act because once this finding is made, the alien is permanently ineligible for any immigration benefits under the INA. I just want to make sure we have the correct procedural posture of this case and what's at issue. After remand, the IJ found that your client was subject to the bar. You're not, we're not today reviewing that decision, are we? In other words, I think there's more than substantial evidence to support the notion that your client filed the frivolous application. Your argument today is it should have never been sent back to the IJ to make that determination, right? Your Honor, the frivolousness determination and frivolous finding are interconnected, so we are saying that immigration judge was bound on remand to conclude. That's right, but your contention today is not that the immigration judge erred in making a frivolousness finding. Your argument today is that the BIA erred in sending the case back to the immigration judge to do that. Yes, but the BIA, the immigration judge felt compelled. I understand, I understand that the judge felt compelled to, but whether she felt compelled to or didn't feel compelled to, you're not attacking, you're not saying that finding is not supported by substantial evidence. That's correct, that's correct. So that leads me to my real question. I'm trying to figure out what the BIA did here. The briefing seems to treat this as whether the BIA made a, determined whether the statute required the IJ to do what he did on remand. Another way of reading it, because there's other stuff in the opinion, is that, look, as a matter of orderly administration, whether or not you're required to do that in the first instance, we want you to, because then we can, we'll have a whole case in front of us for review. And if we're looking at statutory interpretation, we might reach one conclusion. If we're looking at the BIA and the AG structuring the way they do things as a matter of procedure, we might reach another conclusion. So which of the two was the BIA doing and can we tell? Your Honor, I believe the BIA was doing the first question you referred to. We believe that the BIA did not want to address the discretionary finding issue. They just wanted to say that once a, once the DHS raises the frivolousness issue, that the judge is required by law to make a... Required by statute. Yes, that's what they're saying. And we disagree with that. We disagree because we believe that the text, the structure, and the history of the frivolous bar provision all compel the conclusion that immigration judge has discretionary authority whether to initiate a frivolous inquiry or not. So let's say I agree with you on that for a moment, just for purposes of discussion. Could the AG, through the BIA and the IJ, there's sort of a trinity here, they're all the AG. Yes. Could the AG say, look, the statute doesn't require you to make that determination initially, IJ, but our procedures will sure work better if you do. I like you, I want you to make all the determinations put up in front of you in the first instance and then when they come up to the BIA for review, if it disagrees with one, it'll be able to review the other. As a matter of regulatory procedure, could the AG set up such a procedure? I believe the agency could as long as there's proper guidance. Right. The statute doesn't prohibit that procedure, you're just saying it doesn't mandate it. That's correct. Okay. Thank you. Yes. We believe that the board's interpretation of the requires that if the frivolous analysis under matter of YL is satisfied, that a frivolous finding must be made. And given that interpretation, what do we do with that? We've got two different opinions, roughly 10 years apart, that seem to be mutually inconsistent. So what do we do with that? Well, Your Honor, when the agency's decision is inconsistent and it doesn't address the prior ruling, then it is not reasonable under Chevron and should not be given any deference. Um, the board's decision gives absolute power, veto power to DHS over frivolousness determinations, which violate the immigration judges authority to exercise independent judgment and discretion in adjudicating cases. Do we have to, as you well know, the Chevron issue is pending before the Supreme Court. Is it your view that we cannot decide this case without reference to Chevron and its teachings? Yes, Your Honor. The reason being that even if the Supreme Court were to reverse the Chevron doctrine, we believe that Chevron doctrine applies only if the statute is ambiguous and all tools of statutory interpretation have been the entire statutory provision compels the conclusion that immigration judges have the discretionary authority not to entertain frivolousness determinations. So I think, is your answer then to Judge Smith's question, no, we can do this without Chevron? Yes, Your Honor. Okay. Okay. I misunderstood as well. Oh, right. Yeah. What, um, uh, before the IJ on remand from the BIA did, um, where it appears that the BIA, um, provided, um, some discretion, assumed some discretion. Now, whether or not that was consistent with other cases, that's a different question. But they assumed that there was room for the IJ to maneuver after making the findings. Um, did you argue, um, that the IJ could exercise, um, discretion in favor of your client even after the, um, findings? Your Honor, we did not argue because we, we felt that the BIA case law was quite clear in matter of XMC, that, uh, immigration judge was required if the, uh, the frivolous analysis was satisfied to enter a frivolous finding. But you did have the language in the BIA's decision in this case saying, we're not sure you have to. And that's exactly the problem with this case, Your Honor. I know that's the problem, and I guess I'm trying to figure out. It's just a fact. You could have argued that to the IJ given the BIA's decision. It would have been futile. Well, maybe. That was Judge Smith. Yeah, I guess. You had two conflicting BIA decisions. You could have gone to the IJ and said, the second one in my case controls, not the old one, couldn't you? But we believe that the immigration judge lacked the authority. Immigration judges only follow what BIA dictates. But here, it was on remand from a published opinion that specifically, at least purported, to grant that authority. So do you think you've, um, given the procedural posture that we've worked out with Judge Hurwitz here, have you properly preserved this issue? We believe, Your Honor, that in this case, um, that would not have been the right tactic, or, uh, we felt that the better way to go would be to challenge the decision immediately and to give more guidance so the immigration judges can have more guidance and not, you know, guess what they need to do. Um, we believe that BIA had the chance to fix this in the first instance, um, and they should not be Could it fix it in the first instance? Your Honor, they should have explained in their decision that, well, even if the matter of YL analysis was satisfied, that they would, that the judge still has discretion not to enter a frivolous finding, but they never, they left it to another day inexplicably. Here, here's, here's my concern, and I'm not sure which way it cuts. I just want to lay it out for you. BIA says something like, um, we can't engage in our appellate review here unless we know whether or not the facts establish frivolousness. And so we'd like you to go back and tell us that. You don't have to enter a frivolous determination. We can do that. That's a matter of law as opposed to as a matter of fact, but we can't make factual findings. So I sort of read the BIA decision, although I must admit it's susceptible of several readings, as saying, set this up so we can engage in appellate review. You find the facts. If you find the facts establish frivolousness, it can come back to us, and we can then say, gee, you may have wanted to exercise your discretion, but we review that de novo, too. And given these facts, we don't think you should, and we'll apply the bar. Why shouldn't I read the opinion that way? Your Honor, more fact-finding was not necessary. In fact, the DHS's appeal to the Board, they never asked for additional fact-finding. In fact, they said that the fact The Board said we can't find the facts. The DHS is saying that this application is frivolous. We can't engage in fact-finding in the first instance. Your Honor, they were trying to analyze the statute. They were not saying that they couldn't find that in the first instance the facts in this record did not show a frivolous analysis satisfied. Could they have? If the facts were not properly developed, yes. Well, could the Board, on the record in front of it, in this case, have said the facts established frivolousness, we're going to apply the bar? Yes. Without remanding. Exactly. Because that's why additional fact-finding was not necessary. We believe the facts were clear. The DHS even never raised that issue. In fact, the DHS, on their appeal to the Board, asked the Board to enter a frivolous finding based on the record. And there was no additional fact-finding on remand because facts were clear. So the question here is not whether immigration judge could not have entered a frivolous finding in the first instance. Because this all goes back to where I was trying to lead you. What do you want us to do in this case? Even if, under your view of the case, it seems to me we should remand it to the Board and say, gee, you interpreted the statute wrong, but you can enter a frivolousness finding all on your own, and that would be the end of the case. Because that's what you just told me. No, Your Honor. What I was saying was that the legal issues and the factual issues were ripe for adjudication before the Board. There was no need for the Board to send it. But the Board never reached the frivolousness issue because it sent it back to the IJ. And you're telling me now what it should have done is reached it on its own. And I think if you're right, what we ought to do is say to the Board, gee, you didn't need to send it back to the IJ. You could have reached this issue entirely on your own based on the record and have at it. Well, Your Honor, the frivolousness issue was not before the Board. The issue was not whether there was a frivolous finding or could have been a frivolous finding. The issue was discretion.  No, Your Honor. Because the Board plainly has the ability to say, you know, we'd like to know whether this was a frivolous application. But, Your Honor, that was not the issue before the Board. The issue before the Board was whether the judge has discretion not to engage in a frivolous analysis. Okay, but listen. The issue was not. Follow me on this because this is important to me. Let's assume we agree with you that the Board erred in saying that the IJ had the discretion not to engage in a frivolousness analysis. You do agree the Board can review de novo the exercise of that discretion? Yes. And it could then say, gee, IJ, we really want a frivolousness analysis or, as you say, and this record makes it so clear that this was frivolous, that we'll just enter a frivolousness analysis. Yes, that would be a separate issue altogether. Okay, so those are both things that would be open to the Board if we agree with your  Yes. Thank you. Yes, sir. Do you want to save any of your time for rebuttal? Yes, Your Honor. It's probably up to you. Oh, sure. Whatever the remaining time is. 40 seconds. Okay. Thank you. Okay. Okay. Okay. Ms. Tacklett. Good morning, Your Honors, and may it please the Court. I'm Lauren Tacklett representing Merrick Garland, United States Attorney General. In a precedential opinion, the Board clarified the procedure that the immigration judges must follow when the government raises the frivolousness bar issue. Why must they follow that procedure? Is it because the statute requires it? No. It is because the Board is reliant upon the immigration judge to make findings of fact for them to then rule on. But how do I tell them? I must admit, I can't tell that from the BIA's opinion, and I'm not sure I can tell it from the briefing on either side, most of which is devoted to whether or not the difference. I believe Your Honor actually made the exact point, which is that the INA does not require or prohibit the procedure that the Board is prescribing here. However, there's just silence in the statute. It is not clear when the Attorney General must undertake the inquiry, and silence in the statute does not mean that the immigration judge inherently has discretion. It means there's a gap for the agency to fill. And here, the Board reasonably filled that gap. But it purported to be interpreting the statute, and it purported to be saying the statute requires the IJ to do that. And I have some difficulty with that position in a statute that says if. So let's assume that I think that as a matter of law, the statute doesn't require that. What do we do with this case? Even if the statute doesn't require the procedure that the Board established, the Board's procedure is a reasonable procedure for an appellate body, i.e., it relies on the immigration judge's fact-finding. And so establishing that reasonable procedure that is not contrary to the statute should be afforded deference. Let me ask you this. We asked your friend what role, if any, Chevron should play in our analysis. Is it the government's view that we can decide this case without reference to Chevron because the statute is not ambiguous? I would not say that you could decide it completely without deference. The statute and the regulations are silent on when the immigration judges have to undertake this inquiry. However, it's not reliant upon Chevron. I can say it's our deference as opposed to Chevron deference, right? Yes. Any form of deference in the sense that there is some ambiguity. I think also the ambiguity comes from determines. Is determines an application of a legal statute or is it some level of discretion? There's ambiguity in several different places here, and that ambiguity, the board is answering it with a reasonable procedure. I guess there's, on one read of it at least, there's not just ambiguity. I think as you've said, there's just an absence of regulation on this. What do we make of the fact that typically when the department wants to do something that it has criticized us for, it does regulations? There's not, in other words, there's not this room for a generalized gloss to say what they can or can't do outside of the regulations because elsewhere there are requirements for findings. Doesn't the department usually put that in regulation? It can, but it need not. The formal adjudication is another method of establishing agency procedure, and we have a precedential opinion here. So if we're trying to figure out where the bottom of this authority lies, where would we look? Just the general statutory authority of the attorney general? Do you have a site for us? Because one of the problems is when we have the BIA in a published opinion, maybe not being as clear as it could, and potentially conflicting with one or more of its prior opinions, we have to measure that to something, and what we probably ought to be doing is measuring it with respect to either the agency's own regulations or the statute. And I don't think it's really a question of ambiguity. It's a question of just an absence of authority. Can you fill that? Yes, but I can't give you a direct site to a specific regulation on the attorney general's power here. It's just the understood inherent authority of the agency to set its own internal procedures. And all that is required here is that the immigration judge make findings of fact. That doesn't require that the immigration judge find YL satisfied. If you look at the law ---- Is that right? Look at the last paragraph of the BIA's decision, what it instructs the immigration judge to do. Doesn't it instruct him that he also has to decide whether the bar applies? He has to decide whether the bar applies. That doesn't mean that he has to apply ---- he has to determine that it applies. But isn't that what XMC held? No. XMC is dealing with a completely different issue than this case. XMC is about whether a withdrawn asylum application can be used as the basis for the frivolousness bar applying. And that language that the court highlighted in its order read in context. The agency just wasn't even considering the aftermath of YL in that case. All it was doing is trying to decide can we use a withdrawn application. It's the government's position, notwithstanding what the IJ understood the law to be, that an IJ can make the inquiry as required by the opinion here but need not make the determination of frivolousness. The government's position is that the board left that question open. Well, then we're back to how can that question be open if the governing statute starts with the word if? Well, so I think what's important here is that the various YL factors, the analysis that the board is requiring immigration judges undertake when the government raises, those inform whether the filing is truly deliberate. If you look at the language in YL, it's talking about both the third and fourth factors, the opportunity to explain and whether or not there's evidence supporting the IJ's finding. Both of those are supposed to... Sorry. No. The opportunity to explain informs whether there is that frivolousness finding. If we... So I guess what you're saying is that even if the application appears frivolous on its face, the YL factors are not satisfied until somebody has an opportunity to explain. Exactly. Okay. Now... But I'm still reading, I'm still hung up on what the BIA did here. It said if the immigration determines these requirements, the requirements of YL, have been satisfied, she must make the necessary findings of fact and conclusions of law and determine whether the mandatory bar to relief applies in this case. Is there a difference between determining whether it applies and applying it? That's cutting the salami pretty thin, isn't it? Yes. That is... So she was told she had to apply it if she made the necessary findings of fact and conclusions of law after conducting the YL analysis, wasn't she? If those applications of fact to law then indicated that the bar was met, i.e., if she found that it was frivolous. So she really wasn't left with the discretion to whether or not to apply the bar, was she? Once the factual findings had been made. Once the factual findings had been made and then supported that conclusion. I mean, we can have a hypothetical situation. I guess I'm trying to figure out whether it was really left open to her to apply the bar or not, because this language says go through the YL analysis, if those are met, then make the necessary findings of fact and conclusions of law and determine whether the bar applies. And if you determine whether the bar applies, I think that means determine whether to apply the bar. Correct. Yes. The daylight between the YL factors and the specific finding of frivolousness is small, if at all. But that's not the issue that the Board was deciding here. They're leaving that question open another day. They might look at this and then say, yep, you're right, Your Honor, that daylight doesn't exist. And so after this they left that open in this case. That's not the issue. I'm speaking about daylight. As I understand it, in this case, once the BIA remanded this to the IJ to make the frivolousness determination, the petitioner did not appeal that back to the BIA. They waited for the appeal period to expire and then appealed directly to the Ninth Circuit. Normally, if you don't appeal the decision, in effect, you waived your right to appeal the issues made by the lower court. What happens in this case? Does that apply here, or is what the petitioner did appealing directly to us without first appealing the IJ decision back to the BIA? What role does that play? I don't believe that inherently, procedurally, what they did is wrong. In fact, your brief says we have jurisdiction. Yes, yes, you have jurisdiction. The issue, I think, is that they are not able to challenge the frivolousness determination. And we actually consulted with Eeyore and asked, like, if you remand, does that undo the immigration judge's finding? And they said it would depend on what your instructions are on remand. Well, that's why I was asking your friend. I always like to ask both sides, what are we supposed to do here? I understand what you want us to do. You want us to say that the board's decision was correct. But let's assume that we think it's a statutory interpretation decision and that it's wrong as a matter of interpreting the statute, and that I don't buy your argument that it's really just a procedural decision. What do we do in this case? I mean, we can't say that the agency is precluded from looking at frivolousness just because the I.J. didn't, because the BIA could say on appeal, either based on the record or in the exercise, you abuse your discretion in doing this on the equities. So I'm trying to figure out, what's our road map from here if we buy the other side's argument? If you buy the other side's argument and remand, it could be as simple as the board needs to reconsider the procedure that it's establishing. It doesn't inherently undo what the immigration judge did. It doesn't necessarily solve any problem for a petitioner. And in fact, given the board's, you know, analysis of this case, it seems unlikely. All it does is create some ping-pong back and forth. Can I go back to the question that Judge Johnstone started with? If this... Let's assume that this is not a statutory... only a statutory interpretation decision. If it were only a regulatory decision, tell me what regulation the... You say the board has the power to promulgate regulations in published decisions. Tell me, what case says that? What case says the board can promulgate... In other words, I don't see any regulation here that speaks to this issue. I do see a regulation that says the board can come up with procedures. So I'm trying to figure out, is this a board interpreting another regulation or promulgating one on its own? The board here is interpreting both the implementing regulation and the INA 1158-D6. Yeah, and I was asking you to assume that it interpreted 1158 incorrectly. So if it interpreted 1158 incorrectly, what's the independent support for the procedure that it came up with? The implementing regulations would be the first spot. However, those, I would also say... Those don't speak to this. Yeah, those are also silent on this issue. So I believe you would be deferring to the inherent authority to establish internal procedure. Ms. Tacklett, so I guess I was expecting the government and the attorney general to be a little more jealous of the discretion that the if confers. And so you're suggesting... So the government has no position on whether when the DHS asks for a frivolous misfinding, that leads directly to a mandatory determination, not just the inquiry, but the determination. You don't think that's before us here, and you have no position? The... When the government requests the inquiry, they are only requesting the inquiry. They are not then mandating that the frivolousness bar apply. But you're saying you don't have a position and you don't think it's before us that the BIA can then say, under one reading of this decision and a possible reading of some of these other decisions, that once the inquiry is triggered, the determination is mandatory, right? In that last line of the decision. The determination on whether the bar applies, yes. Like, once you begin the inquiry, then... I'm sorry, are you asking... Then you're stuck with wherever it leads? There's no discretion at the end after the inquiry? I would say the discretion comes primarily in listening to the explanation under the fourth Y.L. factor of the opportunity to explain, and that would inform whether or not the second Y.L. factor... Okay, that's not discretion. That's compulsion. If the findings support... Right? The if might suggest that even if the findings support frivolous application, the attorney general can still, right, at the back end, exercise discretion on the determination. Your position is that there's no discretion... Given the mandatory shall, after the language, I think the statute and the regulations are clear that once that determination is made, there is no discretion, no. And the determination is mandatory under this decision. In other words, the findings... If the findings support frivolousness, the I.J. has no choice, the attorney general has no choice, the attorney general shall, once the findings are made and the findings are required. Yes. Other questions? Very well. Thank you very much. You have some rebuttal time, sir. Thank you, Your Honors. Your Honor, this decision is... It cannot be reconciled with the BIA's decision in matter of XMC. Plain and simple. If we are having difficulty figuring things out, just imagine how immigration judges would feel. In this case, the record is clear that immigration judge felt compelled to enter a frivolous finding because the board left that question open. How do you respond to your friend's distinction of XMC as being differently situated procedurally? Your Honor, we believe the language in XMC is quite clear. It clearly says, the words clearly say that if the factors in matter of Y.L. are satisfied, the consequences shall follow. I believe any reasonable reader of that decision would make that decision, would come to that conclusion. Did the board here say anything different? See, I think when you get to its last paragraph, it said, look, go back, you haven't looked at the Y.L. factors. Look at the Y.L. factors if you make the necessary findings and fact and conclusions of law, then you must determine whether the bar applies. And it seems to me, I don't know if that left any discretion up to the... But the board also said that we are not saying that immigration judge must make, you know, must enter. There would be no reason for it to say that if it was agreeing with the matter. Now I'm wondering, after listening to your friend, that what it was saying was, it wasn't discussing the Y.L. factors at that point. It was saying... Merely finding that it was frivolous is not what requires you to enter the bar. What you're required to enter the bar, only after you've analyzed all four of the Y.L. factors, only one of which is the frivolousness of the application. Is that a fair reading of what they did? Uh, no, Your Honor. I do believe that the fair reading of the statute would be the Second Circuit approach. You have discretion to initiate frivolous analysis and also discretion after frivolous analysis to not enter a frivolous analysis. We believe that is the rule, and I believe that, yes, if the court were to conclude that the BIA's decision is correct, then a remand would be appropriate for the board to address whether, even if Y.L. factors are satisfied, does the judge have discretion not to enter. Very well. Thank you very much for your argument. The case of Alcotti v. Garland is submitted. Before we adjourn for the day, I just want to say to the students, you've been very patient. This has been a very technical argument day. We didn't have any murder cases for you or anything like that. Sometimes we have those, but our law clerks will meet with you while we are in conference, and the judges will come out, and if you want, we can talk about things other than immigration cases. I'm sorry? Oh, right. We also hereby are submitting the case of USA v. State of Idaho. And Fuentes-Maldonado. And the Maldonado case. Also Maldonado. Got one more. Fuentes-Maldonado v. Garland is also submitted. The court stands adjourned for the day. All rise.
judges: SMITH, HURWITZ, JOHNSTONE